**Charles KRAMER, Petitioner–Appellant,**

v.

**Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General, State of Louisiana, Respondents–Appellees.**

No. 87–3628
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 26, 1988.

Robert F. Barnard, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, La., for petitioner-appellant.

Dorothy A. Pendergast, John J. Molaison, Jr., Asst. Dist. Attys., John M. Mam-

---

oulides, Dist. Atty., Research & Appeals Office, Gretna, La., for respondents-appellees.

Before GEE, GARWOOD, and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Charles J. Kramer, Jr. (Kramer) appeals the district court's dismissal of his petition for writ of habeas corpus challenging his 1974 Louisiana second degree murder conviction. We affirm.

**Facts and Proceedings Below**

On March 22, 1974, an indictment was filed charging Kramer with first degree murder. At the request of Kramer's attorneys, the Louisiana trial court appointed a sanity commission pursuant to articles 643–644 of the Louisiana Code of Criminal Procedure. On April 18, 1974, this commission reported its findings to the court. Based on these findings, the Louisiana court determined that Kramer was sane at the time the crime was committed and that he was competent to stand trial. Subsequently, Kramer's attorneys filed a motion for additional psychiatric tests. The court eventually granted this motion, and thereafter a third physician undertook a psychiatric examination of Kramer. On July 24 through July 26, 1974, Kramer was tried before a jury on the first degree murder charge. During the trial, no evidence of insanity was tendered; the defense was instead based on self-defense. On July 26, 1974, Kramer was found guilty of second degree murder and was sentenced to life imprisonment. This conviction was subsequently affirmed on appeal without opinion. *See State v. Kramer,* 354 So.2d 1351 (La.1978).

In 1980, Kramer, *pro se,* filed a habeas petition in the court below challenging his second degree murder conviction on the basis of claims that his confession was coerced and that testimony as to other crimes were erroneously admitted in evidence at his trial. In January 1981, that petition was dismissed on the merits, Kramer appealed, and the dismissal was affirmed by this Court in an unpublished opinion. *Kramer v. Maggio,* 680 F.2d 1388 (5th Cir.1982) (table).

Afterwards, Kramer attempted to further collaterally attack his conviction by filing two petitions for a state writ of habeas corpus. However, the Louisiana Supreme Court denied both of these petitions without opinion. *See State ex rel. Kramer v. Blackburn,* 475 So.2d 776 (La.1985) ("Relator must first file in district court."); *State ex rel. Kramer v. Maggio,* 458 So.2d 114 (La.1984).

On June 5, 1986, Kramer filed the instant habeas corpus petition in the court below. He alleged four grounds for relief: (1) denial of a fair competency hearing; (2) ineffective assistance of counsel at the competency hearing and at trial for not developing an insanity defense; (3) failure to prove that he had the requisite intent for second degree murder; and (4) failure to prove the corpus delicti of the offense. On August 8, 1986, the state filed an answer resisting the writ; as to grounds (3) and (4) the state relied, among other things, on claimed abuse of the writ under Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts (28 U.S.C. foll. § 2254). The public defender was appointed to represent Kramer on August 27, 1986, and at that time the case was set for evidentiary hearing on January 7, 1987. Pursuant to the August 27 order, a pretrial conference was also held December 29, 1986. On January 7, 1987, the scheduled evidentiary hearing was held on all issues before a magistrate. Several witnesses, including Kramer, testified at this hearing, and documentary evidence was introduced. At the conclusion of the hearing, the case was orally argued to the magistrate. During that argument, Kramer's counsel, after conferring with him, withdrew the first ground for relief, and also moved that the magistrate order that an electroencephalogram be taken of Kramer, which motion the magistrate orally denied. Later that day, the magistrate issued an order reciting that the first ground for relief had been withdrawn, and ordering the parties to sub-

mit briefs by not later than February 17. On January 8, 1987, the magistrate approved Kramer's motion that $200 be paid to the doctor who had examined Kramer at his counsel's request for purposes of the hearing.

On February 5, 1987, Kramer filed a motion to dismiss without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). On February 25, a hearing was held on this motion. At the hearing, the state objected to the motion, noting that it had filed an answer and did not consent to dismissal, that an evidentiary hearing had already been held, and that considerable funds had been expended to transport Kramer between the penitentiary and the courthouse. On March 30, 1987, the district court denied Kramer's motion to dismiss, pointing out that all that remained to be done was for the magistrate to file his recommendations and the court to act on them. In a supplemental memorandum filed May 11, 1987, Kramer, through counsel, abandoned his third asserted ground for relief.[1] On June 12, 1987, the magistrate submitted his findings and recommendations to the court. The district court approved these recommendations and on August 10, 1987, entered judgment dismissing Kramer's petition for federal habeas relief. This appeal followed.

## Discussion

In his appeal, Kramer raises only two issues. The first is whether he was denied the effective assistance of counsel at his state trial. The burdens that a habeas petitioner must carry to obtain relief on this Sixth Amendment claim are well-settled. First, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In this connection, the petitioner must identify the particular acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *See id.,* 104 S.Ct. at 2066. In ruling on the petitioner's claim, "a court must indulge a strong presumption that coun-

sel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 2065. Second, the petitioner must show that the deficient representation was materially prejudicial to him. To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *See id.* Unless the petitioner makes both showings, he is not entitled to relief. *See Thomas v. Lynaugh,* 812 F.2d 225, 229 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987). The magistrate, following the evidentiary hearing, determined that counsel's performance was not deficient and that Kramer had failed to demonstrate prejudice. The district court likewise found that counsel was not deficient, but did not address the issue of possible prejudice.

In his brief on appeal, Kramer identifies only one area in which his attorneys allegedly denied him effective assistance: their handling of his insanity defense. Specifically, Kramer argues that by not pursuing all possible leads in connection with a potential insanity defense—in particular, by not ensuring that Kramer was tested for temporal lobe epilepsy, a possible cause of "blackouts" or "temporary psychoses"— his attorneys failed to provide him with effective assistance. We reject this argument. To begin with, Kramer's attorneys proved themselves quite diligent in pursuing a potential insanity defense for him. Not only did they request appointment of a sanity commission pursuant to articles 643–644 of the Louisiana Code of Criminal Procedure, but when the findings of that commission turned out to be unfavorable to Kramer, the two psychiatrists who composed the commission having determined that Kramer was not insane at the time of the crime, Kramer's attorneys successfully moved the court to appoint a third psychiatrist to examine him. After this psychiatrist also determined that Kramer was not

---

1. On appeal, Kramer expressly abandons his fourth ground of relief, which concerns the claimed failure to establish the corpus delicti.

*See Autry v. Estelle,* 706 F.2d 1394, 1407 (5th Cir.1983).

insane at the time the crime was committed, Kramer's attorneys decided that an insanity defense was untenable and turned instead to the defense of self-defense. Given that Kramer's attorneys were unable to uncover any facts that would support an insanity defense for him, their decision to abandon that defense can hardly be said to be objectively unreasonable.

At the evidentiary hearing held on January 7, 1987, Kramer presented evidence that he might have suffered from temporal lobe epilepsy at the time of the crime and that this form of epilepsy might have caused him to "black out." He concludes that his attorneys acted unreasonably in not ordering that he undergo a brain scan, which is what would have been required to determine whether he had this malady. However, Kramer had never informed his state trial attorneys that he might be prone to having "blackouts," let alone that he might have experienced one at the time of the crime. Not having been informed that Kramer might have suffered from such a malady, Kramer's attorneys can hardly be faulted for not ordering a brain scan to determine whether it existed. Moreover, there is no evidence that any of the doctors who examined Kramer prior to his state trial even suggested that such a test might be desirable. Certainly, in the context of this case, counsel did not act in an objectively unreasonable manner in failing to have any such test performed.

Having determined, in agreement with the magistrate and district court, that Kramer's attorneys did not represent Kramer in a manner that fell below an objective standard of reasonableness, we have no need to ascertain whether Kramer might have been "prejudiced" by the manner in which they represented him. Because Kramer has failed to establish the first part of the two-part *Strickland* test, we conclude that his ineffective assistance claim must fail.

 The second issue that Kramer raises in this appeal is whether the district court abused its discretion in denying his motion to dismiss without prejudice pursu-

ant to Fed.R.Civ.P. 41(a)(2). "Dismissal on motion under Rule 41(a)(2) is within the sound discretion of the court, and its order is reviewable only for abuse of discretion." C. Wright & A. Miller, *Federal Practice and Procedures: Civil* § 2364 at 161–62 (footnotes omitted). At least this is so where, as here, the dismissal is sought *without* prejudice. *Id.* at 163. The same authority observes that "an especially strong showing is required to warrant voluntary dismissal without prejudice after the plaintiff has concluded his evidence." *Id.* at 170 (footnote omitted). *See also Evans v. Teche Lines*, 112 F.2d 933, 934 (5th Cir.1940).

Kramer does not dispute that Rule 41(a) may be applied in a habeas corpus proceeding. *See* Rule 11, 28 U.S.C. foll. § 2254. Rather, Kramer argues, citing *Potts v. Zant*, 638 F.2d 727 (5th Cir.), *cert. denied*, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981), that Rule 41(a) should not be applied "blindly" in a habeas corpus proceeding. However, the case on which Kramer relies to support his argument is inapposite. The issue in *Potts* was whether a habeas petitioner's dismissal of his first habeas petition pursuant to Rule 41(a)(1) could be considered in making an abuse-of-the-writ determination pursuant to Rule 9(b), 28 U.S.C. foll. § 2254, in connection with that petitioner's second habeas petition. *See Potts*, 638 F.2d at 742. Here, the issue is entirely different, namely, whether the district court abused its discretion in denying Kramer's motion to dismiss without prejudice pursuant to Rule 41(a)(2).

In support of his position that the district court abused its discretion, Kramer's sole argument is that he had a valid reason for wanting a dismissal. Kramer stated that he desired to raise one new habeas claim on which he had not exhausted his state remedies [2]; that if he attempted to add this new claim to his present petition, the entire petition would be dismissed for failure to exhaust under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); and that if he were forced to raise this claim in a third federal habeas petition, the

---

**2.** So far as appears from the record, the only information Kramer furnished the court below

as to this new claim is:

third petition might be dismissed pursuant to Rule 9(b) as an abuse of the writ.

We reject this argument and hold that the district court did not abuse its discretion in denying Kramer's motion to dismiss without prejudice.

First, as this Court wrote in *Schwarz v. Folloder,* 767 F.2d 125 (5th Cir.1985): "In determining whether to grant a dismissal, the principal consideration is whether the dismissal would prejudice the defendant. If a dismissal would unfairly prejudice the defendant, then the plaintiff's motion to dismiss should be denied." *Id.* at 129. In the present case, there is no doubt that the state would have been prejudiced if the district court had dismissed Kramer's petition. Not only had the state filed an answer, but as the district court pointed out, "A full evidentiary hearing has been conducted on the grounds asserted in this pending proceeding, at significant expense to the state and federal governments. All that remains is for the magistrate to file his report and for this court to act thereon." *See Evans,* 112 F.2d at 934. We also observe the asserted new claim (*see* note 2, *supra*) was apparent on the face of the state record (which was on file below as well as in the prior federal habeas), and no excuse was offered for its not having sooner been brought forward, especially as counsel had been appointed for several months prior to the pretrial hearing. Moreover, this was Kramer's second federal habeas, he had already pursued state direct appeal and habeas remedies, his con-

viction was then well over ten years old, and he was still dropping and trying to add claims at what could fairly be characterized as "the last minute."

Second, the reason offered by Kramer is not compelling. To begin with, whether a habeas petition is dismissed as an abuse of the writ under Rule 9(b) is to a large extent discretionary rather than automatic or mandatory. *See Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 1078–79, 10 L.Ed. 2d 148 (1963). Furthermore, whether a later petition by Kramer is to be dismissed under Rule 9(b) is ultimately for the decision of the court considering any such petition, and that matter cannot be definitively determined by the court considering the Rule 41(a)(2) motion. *Cf. Maher v. Zapata Corp.,* 714 F.2d 436, 460 (5th Cir.1983) (noting that district court, in approving settlement agreement, did not err by failing to give determinative weight to possible preclusive effect of that settlement as such effect was primarily matter for subsequent court to consider).[3]

We hold that the district court did not abuse its discretion in denying Kramer's motion to dismiss without prejudice pursuant to Rule 41(a)(2).

## Conclusion

We conclude that Kramer is not entitled to habeas relief on the ground that he was denied the effective assistance of counsel at his trial. We also conclude that the district court did not abuse its discretion in

"It has come to petitioner's attention that the trial court improperly charged the jury in the present case. In particular, the state trial court instructed the jury that it must confine its deliberations, and therefore its verdict, to the evidence and testimony which was adduced from the witnesses who testified. This was correct as far as it went, however, the state trial court failed to further instruct the jury that it could also consider the lack of evidence in reaching a verdict."

As this claim was not raised in the state courts, by objection at trial or assignment of error on appeal, it might arguably be barred by the contemporaneous objection rule. *See* La. Code Crim.Proc. arts. 841, 844; *Tasco v. Butler,* 835 F.2d 1120, 1124–25 (5th Cir.1988) (concurring opinion of Garwood, J., joined by Jones, J.); *Webb v. Blackburn,* 773 F.2d 646, 651 (5th Cir.1985). In at least two Louisiana habeas

cases we have held that analogous attacks on the court's charge were barred by the Louisiana contemporaneous objection rule, which we presumed the Louisiana courts had applied when they had denied relief without opinion. *See Bates v. Blackburn,* 805 F.2d 569, 574 (5th Cir. 1985); *Rollins v. Maggio,* 711 F.2d 592 (5th Cir.1983).

3. Nor is it wholly clear that there will be a subsequent federal habeas petition or, if so, that the applicability of Rule 9(b) will be controlling therein. If the Louisiana courts hold that Kramer's new claim is not procedurally barred, they might grant relief; if they deny relief for procedural bar, that of itself might bar federal relief without consideration of Rule 9(b) (*see* note 2, *supra*), or such relief might otherwise be denied apart from Rule 9(b).

denying Kramer's motion to dismiss without prejudice pursuant to Rule 41(a)(2), which was made nearly a month after the conclusion of the evidentiary hearing. Accordingly, the judgment of the district court dismissing Kramer's petition for a writ of habeas corpus is in all respects

AFFIRMED.